UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMARA B.,

                          Plaintiff,

v.                                                      3:18-CV-0422
                                                        (TWD)
COMM'R OF SOC. SEC.,

                          Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                     KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Tamara B. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 16 and 17.)  For the reasons set

forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion

for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1981, making her 36 years old at the date of ALJ Ramos' January 2018 decision.  Plaintiff reported obtaining a GED and previous work as a dietary aide and home health aide.  She has generally alleged disability due to fibromyalgia, anxiety, and anemia.

### B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on January 12, 2010, alleging disability beginning November 20, 2009.  Her applications were initially denied on April 15, 2010, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at an administrative hearing before ALJ Elizabeth W. Koennecke on July 7, 2011.  (T. 27-69, 536-78.[1]) On September 1, 2011, ALJ Koennecke issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-26, 482-502.)  On August 16, 2013, the Appeals Council denied Plaintiff's request for review.  (T. 1-6, 510-15.)  Plaintiff filed subsequent Title II and Title XVI applications on October 28, 2013, alleging disability beginning November 1, 2011.  (T. 508, 516-35, 706-18, 518, 529, 747.)  These applications were initially denied on February 12, 2014.  (T. 641-56.)  Plaintiff also appealed ALJ Koennecke's September 2011 unfavorable decision to the United States District Court for the Northern District of New York and this Court ordered remand for further administrative action pursuant to Sentence Four of 42 U.S.C. § 405(g) upon stipulation of the parties on June 2, 2014.  (T. 477-81.)  The Appeals Council

---

[1]    The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

remanded the case back to ALJ Koennecke on August 4, 2014, indicating that the ALJ would consolidate Plaintiff's subsequent claims, create a single record, and issue a new decision on the consolidated claims.  (T. 503-09.)

Plaintiff appeared at a subsequent administrative hearing before ALJ Koennecke on March 30, 2015.  (T. 443-76, 1091-1124.)  On June 25, 2015, ALJ Koennecke issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 406-42, 1035-71.) Plaintiff appealed ALJ Koennecke's June 2015 decision to the United States District Court for the Northern District of New York and, on September 14, 2016, the Honorable David E. Peebles, Magistrate Judge, found that the Commissioner's June 2015 decision was not supported by substantial evidence and must be vacated.  (T. 1072-86.)  On November 3, 2016, the Appeals Council vacated the decision and remanded the case, directing that it be assigned to another ALJ. (T. 1087-90.)

Plaintiff appeared at two subsequent administrative hearings before ALJ John P. Ramos on May 25, 2017, and October 24, 2017.  (T. 977-1034.)  On January 11, 2018, ALJ Ramos issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 944-76.)  Plaintiff filed the current appeal in the United States District Court for the Northern District of New York on April 6, 2018.  (Dkt. No. 1.)

## C.    ALJ Ramos' January 2018 Decision

The ALJ made the following findings of fact and conclusions of law.  (T. 950-65.) Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2013, and she engaged in substantial gainful activating during part of 2014 and part of 2015.  (T. 950.)  However, there were continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity.  (*Id*.)  Plaintiff has severe impairments including fibromyalgia,

3

Lyme disease, and a mental impairment variously characterized, but she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 950-54.) Plaintiff has the RFC to perform light work except

> she should not climb ladders or scaffolds or balance as that term is defined in the [Dictionary of Occupational Titles ("DOT")]. She cannot work at unprotected heights, with moving mechanical parts, or operate a motor vehicle. She can frequently be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, extremes of temperature, and vibrations. She retains the ability to: understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention/concentration for simple tasks, regularly attend to a routine and maintain a schedule, and relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint efforts to achieve work goals and should not have interaction with the public. She can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks and should work in a position where she is not responsible for the work of others and with little change in daily routine or work duties or processes.

(T. 954.) She is unable to perform her past relevant work, but Plaintiff can perform jobs existing significant numbers in the national economy. (T. 963-64.) The ALJ therefore concluded Plaintiff is not disabled.

### D.     The Parties' Briefings on Their Cross-Motions

On April 9, 2018, Plaintiff's counsel submitted a Notice of Related Case requesting that this case be reassigned to the Honorable David E. Peebles who had been assigned to Plaintiff's previous District Court case with virtually identical issues. (Dkt. No. 5.) On July 24, 2018, the parties submitted a stipulation and agreement ordering reassignment of this case. (Dkt. No. 12.) The Court reviewed the Notice of Related Case and the stipulation and indicated that, since the Court's review is to determine whether correct legal principles were applied and substantial

evidence supports the new January 2018 ALJ decision, the request to reassign the case was denied. (Dkt. No. 13.)

1.      **Plaintiff's Motion for Judgment on the Pleadings[2]**

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. (Dkt. No. 16 at 13-27.[3]) First, the RFC is unsupported by substantial evidence because of the ALJ's failure to assess any limitations to work pace and/or attendance which is contrary to undisputed medical opinions that Plaintiff has severe limitations to both work pace and attendance. (*Id*. at 13-21.) Plaintiff next asserts the ALJ improperly found that she can meet the demands of light work because all of her treating physicians assessed limitations to lifting and carrying inconsistent with the exertional demands of light work. (*Id*. at 21-26.) Plaintiff also contends the ALJ's mental RFC likewise is not supported by substantial evidence. (*Id*. at 26-27.) Finally, Plaintiff argues the Step Five determination is not supported by substantial evidence because it is based on vocational expert ("VE") testimony in response to a hypothetical question which mirrored the RFC determination, but the RFC is not supported by substantial evidence and does not accurately reflect the true limiting effects of her impairments. (*Id*. at 27.)

2.      **Defendant's Motion for Judgment on the Pleadings**

Defendant makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 17 at 6-17.) First, Defendant argues the ALJ properly evaluated the medical opinions of record and the ALJ's RFC finding was supported by substantial evidence. (*Id*. at 6-15.) Second, Defendant asserts the ALJ's Step Five finding was supported by substantial evidence

---

[2]      Plaintiff filed a motion to allow for a reply brief. (Dkt. No. 18.) The Court denied Plaintiff's motion and indicated it will not consider Plaintiff's reply brief when determining this appeal. (Dkt. No. 19.)

[3]      Page numbers in citations to documents identified by docket number refer to the page numbers inserted by the Court's electronic filing system maintained by the Clerk's office.

because the ALJ presented a hypothetical question to the VE mirroring the RFC and accurately included Plaintiff's vocational profile.  (*Id*. at 15-17.)  Defendant contends the ALJ properly relied on the VE's testimony in concluding Plaintiff could successfully adjust to other work existing in significant numbers in the national economy.  (*Id*. at 16-17.)

## II.     RELEVANT LEGAL STANDARD

### A.       Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.  Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases

previously discussed, the claimant bears the burden of the proof as
to the first four steps, while the [Commissioner] must prove the final
one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC and Fibromyalgia

RFC is defined as "'what an individual can still do despite his or her limitations . . . .

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d

200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal

citations omitted). "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."

*Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny

impairment-related limitations created by an individual's response to demands of work . . . must

be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL

7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985

WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to

enable [the Court] to decide whether the determination is supported by substantial evidence."

*Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R.

§§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature

and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

When determining residual functional capacity based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence (or lack thereof) related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record. *See Campbell v. Colvin*, 13-CV-0451 (GLS/ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (citing SSR 12-2p, 2012 WL 3104869, at *3). "A 'mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability,' but denying a fibromyalgia-claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error." *Id*. at *6 (citing *Grenier v. Colvin*, 13-CV-0484 (GLS), 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014)).

### i.    The ALJ's Analysis of Plaintiff's Mental Limitations

Prior to determining Plaintiff's RFC, the ALJ considered her alleged impairments and found fibromyalgia, Lyme disease, and a mental impairment (variously characterized) to be severe conditions.  (T. 950-52.)  In considering Plaintiff's mental impairment, the ALJ found Plaintiff has a moderate limitation in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and managing oneself.  (T. 952-54.)  Within his RFC analysis, the ALJ noted Plaintiff alleged anxiety, trouble concentrating and memory problems but she had mostly negative clinical findings and was able to engage in quite a few activities.  (T. 960.)  The ALJ then considered Plaintiff's alleged limitations and treatment records as well as the opinion evidence.  (T. 960-62.)

In March 2010, consultative examiner Dr. Moore noted Plaintiff's attention and concentration and recent and remote memory skills were impaired possibly due to impulsive disorder.  (T. 292-93.)  She diagnosed adjustment disorder with mixed anxiety and depressed mood, posttraumatic stress disorder, obsessive-compulsive disorder, impulse control disorder not otherwise specified ("NOS"), and the need to rule out attention deficit hyperactivity disorder (combined type) and bipolar disorder NOS.  (T. 294.)  Dr. Moore opined Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks under supervision, consistently perform simple tasks, learn simplistic tasks, and relate adequately with others.  (T. 293.)  She also opined Plaintiff showed difficulty with attention and concentration with mildly impaired memory and difficulty dealing with stress.  (*Id*.)  She indicated Plaintiff might have some difficulty with complex tasks with her anxiety, depression and impulsivity possibly causing problems with making appropriate work decisions and maintaining a regular work schedule.  (T. 294.)  The results of the examination appeared to be consistent with psychiatric issues, as well as

stress related issues, which might significantly interfere with Plaintiff's ability to function on a daily basis. (*Id.*) The ALJ afforded only some weight to this opinion, noting that Dr. Moore did not review Plaintiff's records and examined her on only one occasion and that the opinion was somewhat inconsistent with Plaintiff's activities. (T. 960.)

In April 2010, the state Agency consultant Blackwell opined Plaintiff had moderate limitations in sustained concentration and persistence, social interaction, and adaptation, but retained the functional capacity to perform the basic mental demands of unskilled work activity. (T. 296-98.) The ALJ afforded this opinion significant weight given Blackwell's specialty, programmatic knowledge, and review of Plaintiff's records up to that point, along with the support found in the evidence of record. (T. 960-61.)

In March 2011, Dr. Nichols opined Plaintiff had moderate limitations in her ability to concentrate and sustain work pace. (T. 377.) In May 2011, Dr. Bouali opined Plaintiff had moderate limitations in her ability to concentrate and severe limitations in her ability to sustain work pace. (T. 381.) The ALJ afforded these opinions limited weight because they were not supported by documented complaints or clinical findings and were inconsistent with Plaintiff's activities. (T. 961.)

In January 2014, consultative examiner Dr. Loomis observed anxious affect, euthymic mood, and moderately impaired attention and concentration and recent and remote memory skills most likely due to anxiety. (T. 928-29.) Dr. Loomis noted diagnoses of generalized anxiety disorder, leg discomfort and spasms, left hip pain, and asthma. (T. 930.) She opined Plaintiff exhibited no impairment in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, make appropriate decisions or relate adequately with others and moderate impairment in her

ability to maintain attention and concentration, perform complex tasks independently or under supervision, and appropriately deal with stress. (T. 929.) The results of the examination appeared to be consistent with psychiatric problems, but in itself, this did not appear to be significant enough to interfere with her ability to function on a daily basis. (*Id*.) The ALJ afforded some weight to this opinion given Dr. Loomis' specialty and personal examination of Plaintiff along with the support found in the evidence of record. (T. 962.)

At a previous March 2015 administrative hearing, medical expert Stephen Kaplan, M.D., concluded Plaintiff's work should be low stress. (T. 456-57, 962.) Although Dr. Kaplan did not personally examine Plaintiff and reviewed an incomplete record, the ALJ afforded some weight to this opinion given the general support found in the record regarding low stress work. (T. 962.)

### ii.    The ALJ's Analysis of Plaintiff's Physical Limitations

In determining Plaintiff's physical RFC, the ALJ noted Plaintiff's records documented some positive clinical findings including gait difficulties, positive tender points, and use of a cane or walker at various times, but that these findings were not constant and despite those findings, Plaintiff was repeatedly in no acute distress and was able to engage in a vast array of activities. (T. 955.) The ALJ considered Plaintiff's reports, work history, and treatment records as well as the opinion evidence. (T. 955-60.)

In March 2010, consultative examiner Marianne Soden-Serjanej, M.D., noted Plaintiff's complaints of fibromyalgia-like pain, anxiety issues, and asthma and indicated she did not believe Plaintiff's walker was medically necessary. (T. 285, 287.) She diagnosed fibromyalgia by history, leg pain, immobility on exam, asthma by history, and anxiety issues by history. (T. 289.) Dr. Soden-Serjanej indicated it was difficult to assess for limitations secondary to marked inconsistencies on the physical exam and Plaintiff's lack of cooperation and opined that Plaintiff

should avoid known respiratory irritants that might exacerbate her asthma. (*Id.*) The ALJ afforded this opinion some weight given Dr. Soden-Serjanej's personal examination of Plaintiff, noting the record did not support the need for respiratory irritant limitations because there was no evidence of asthma-related difficulties, Plaintiff's respiratory clinical findings were negative, and Plaintiff smoked cigarettes and marijuana. (T. 955-56.)

In May 2010, Dr. Nichols noted that while Plaintiff appeared to have fibromyalgia, her disability seemed out of proportion to what he normally saw and there might be other pathologies present, or, more likely psychological factors that aggravated muscle pain and weakness. (T. 330.)

In March 2011, Dr. Nichols diagnosed fibromyalgia, anemia, hip bursitis, and pain disorder associated with psychological factors and a general medical condition. (T. 378.) He opined that attempting sedentary work on a sustained basis would result in a substantial number of absences from work (four or more per month), but with appropriate treatment, he expected improvement. (T. 376.) Dr. Nichols also opined Plaintiff would need one 10-minute rest period per hour or less, could sit for less than six hours of an eight-hour day, could stand for at least two hours, could lift up to 10 pounds occasionally, and needed to alternate positions between sitting and standing. (T. 376-77.) Concentration and work pace were moderately limited at 20 percent or greater but not preclusive. (T. 377.) Dr. Nichols indicated these limitations had existed since February 2006. (T. 378.) The ALJ afforded limited weight to this opinion, noting Plaintiff had engaged in many work activities after February 2006 and the limitations opined by Dr. Nichols were inconsistent with Plaintiff's activities and were not supported by the clinical findings or his treatment notes, which documented almost entirely negative findings prior to March 2011. (T.

188-95, 751-61, 780-87, 956.)  The ALJ also indicated most of the limitations reported by Dr. Nichols were not even supported by documented complaints.  (T. 956.)

In May 2011, rheumatologist Dr. Bouali opined Plaintiff would need more than one 10-minute rest period per hour and sedentary work on a consistent basis would result in a substantial number of absences.  (T. 380-81.)  Dr. Bouali also opined Plaintiff could sit for less than six hours out of an eight-hour day, needed to alternate positions between sitting and standing, was not able to stand for two hours out of an eight-hour day, and could lift up to 10 pounds occasionally and that her conditions had a severe effect on her ability to sustain work pace.  (*Id*.)  The ALJ afforded limited weight to this opinion, noting it was also inconsistent with Plaintiff's activities of daily living and was not supported by her clinical findings or documented complaints up to that time.  (T. 956.)  The ALJ also noted there was no evidence that Plaintiff returned to Dr. Bouali after June 2011.  (T. 957.)

The ALJ indicated that Dr. Nichols noted Plaintiff displayed symptom magnification in August 2014, January 2015, July 2015, November 2015, December 2015, December 2016, and April 2017 and that he noted Plaintiff's complaints seemed out of proportion to her general appearance in January 2015 with no joint swelling, redness or synovitis, but acknowledged sometimes physical findings could be minimal with quite disabling conditions.  (T. 892, 895, 957-58, 1303, 1438, 1473, 1500, 1643.)  The ALJ also noted Plaintiff reported taking care of a handicapped person in her home which included moving the person.  (T. 958, 1488.)

In January 2014, consultative examiner Dr. Jenouri observed Plaintiff had an antalgic gait with a limp and normal stance, was unable to walk on her heels and toes or squat without difficulty, used a prescribed cane for pain, weightbearing and balance, outdoors and on occasion.  (T. 932.)  He recommended Plaintiff continue using the cane and noted she needed no help

14

changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  (*Id*.)  She had limited range of motion in the lumbar spine with positive bilateral straight leg raising ("SLR") testing (confirmed seated), bilateral sciatic notch nerve tenderness to palpation, some shoulder and hip range of motion limitation, trigger points for fibromyalgia at the bilateral shoulders, bilateral knees and bilateral lumbar area, decreased sensation to fine touch in the bilateral lower extremities, and somewhat reduced strength in the lower extremities.  (T. 933-34.)  Dr. Jenouri diagnosed left hip pain, bilateral buttocks pain, right lower extremity radiculopathy, fibromyalgia, asthma, and a history of anxiety.  (T. 934.)  He opined moderate restrictions to walking, standing, sitting long periods, bending, stair climbing, lifting, and carrying and indicated Plaintiff should avoid smoke, dust, and other known respiratory irritants.  (*Id*.)  The ALJ afforded limited weight to this opinion, noting Dr. Jenouri examined Plaintiff on one brief occasion and did not review her records, his opinion was inconsistent with her activities, and the record did not support the need for respiratory irritant limitations.  (T. 957.)

In February 2015, Dr. Nichols noted Plaintiff's chronic anxiety disorder, fibromyalgia, and chronic fatigue syndrome causing pain, fatigue, diminished concentration and work pace, and the need to rest at work.  (T. 899.)  He indicated she would be off-task more than 33 percent of the day and absent more than four days per month.  (T. 899-900.)  Dr. Nichols also opined Plaintiff could sit four hours out of an eight-hour day, needed to change position every 20 minutes, could stand/walk for two hours, and should not lift any weight.  (T. 900.)  The ALJ afforded this opinion limited weight, noting Plaintiff was working at the time and Dr. Nichols' opinion was inconsistent with her work activities and activities of daily living and was not supported by her treatment notes and clinical findings.  (T. 958.)  In April 2017, Dr. Nichols

opined Plaintiff's limitations continued to be about the same as he reported in February 2015. (T. 1287-90.) The ALJ afforded limited weight to this updated assessment, noting those limitations were inconsistent with Plaintiff's activities and were not supported by her treatment notes or clinical findings. (T. 959.)

At the March 2015 administrative hearing, medical expert Dr. Kaplan indicated Plaintiff should be at sedentary work with low stress and postural, overhead, and environmental limitations. (T. 456-57, 958.) The ALJ afforded this opinion only some weight, noting Dr. Kaplan did not personally examine Plaintiff, reviewed an incomplete record, and rendered an opinion somewhat inconsistent with her vast array of activities. (T. 958.)

In May 2017, Dr. Mast, who treated Plaintiff for Lyme disease, noted fatigue, brain fog, and pain causing diminished concentration and work pace, and the need to rest at work. (T. 1648.) Dr. Mast opined Plaintiff would be off-task more than 33 percent of the day and absent more than four days per week, she could sit for one hour and stand/walk for one hour, needed to change position every hour, and could lift up to five pounds occasionally. (T. 1648-49.) The ALJ afforded limited weight to this opinion, noting these limitations were inconsistent with Plaintiff's activities, were not supported by her treatment notes or clinical findings, and the record contained only a few treatment notes from Dr. Mast. (T. 959.)

In October 2017, medical expert Dr. Chandrasekhar noted Plaintiff's chronic pain complaints and demand for opioids including IV morphine, fluctuating weights without any explanation, anxiety and depression, and inconsistencies between the complaints and findings. (T. 1664.) Dr. Chandrasekhar opined Plaintiff could continuously lift/carry up to 20 pounds and occasionally lift/carry up to 50 pounds, could sit/stand/walk for six hours each without interruption for a total of eight hours each, could continuously reach, handle, finger, feel, and

push/pull, and use her feet to operate foot controls. (T. 1656, 1658-59.) Dr. Chandrasekhar opined Plaintiff did not require a cane to ambulate and she could frequently climb stairs and ramps, never climb ladders or scaffolds or balance, continuously stoop, kneel, crouch and crawl, never tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, and frequently tolerate humidity, wetness, pulmonary irritants, extreme heat/cold, and vibrations. (T. 1658, 1660-61.) Dr. Chandrasekhar noted Plaintiff was on psychiatric medications, she seemed to demand opiates and get them, and there was opiate dependence suspected with psychiatric and opioid issues as the major problems. (T. 1658, 1660-62.) The ALJ afforded significant weight to this opinion, noting Dr. Chandrasekhar's professional expertise and review of almost the entire record along with the support found in the evidence of record. (T. 959.)

### iii. The Court's Analysis

Plaintiff argues the RFC determination is not supported by substantial evidence because (a) the ALJ improperly failed to assess accurate limitations related to concentration, work pace, and attendance in light of the opinions from treating physicians Dr. Nichols, Dr. Bouali, and Dr. Mast as well as the consultative opinions from Dr. Moore and Dr. Loomis; (b) the ALJ violated the treating physician rule in rejecting these treating physician opinions, arbitrarily substituted his opinion for that of competent medical opinion, and failed to satisfy the strict overwhelmingly compelling standard in making a contrary conclusion to undisputed medical evidence in the absence of any supporting medical opinion; (c) the ALJ failed to specifically address the issues of work pace and/or attendance or explain why he did not find any limitations notwithstanding the medical opinions of record; (d) the ALJ erred in relying on consultant Blackwell's opinion; (e) the ALJ's analysis reflects a continued misunderstanding of Plaintiff's fibromyalgia; and (f) the ALJ improperly gave Dr. Chandresekhar's unsupported opinion significant weight and found

17

Plaintiff could perform light work despite the opined lifting and carrying limitations from her treating physicians. (Dkt. No. 16 at 13-26.) The Court finds these arguments unpersuasive for the following reasons.

First, the Court finds the ALJ provided sufficient analysis of the various opinion evidence and adequate explanations for the weights afforded to each of them, including those opinions from Plaintiff's treating sources. Although Plaintiff argues that the ALJ failed to properly assess limitations related to concentration, work pace, attendance, lifting and carrying, the Court's review of the ALJ's decision does not support these arguments. There is a breadth of treatment and opinion evidence involved in this case and it was within the ALJ's purview to review all of the evidence which was before him, resolve any inconsistencies therein, and make a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56).

As summarized above, the ALJ's analysis of the opinion evidence does not indicate that he violated the treating physician rule, arbitrarily substituted his opinion for that of competent medical opinion, or failed to satisfy the strict overwhelmingly compelling standard. Rather, the ALJ provided a detailed review of a significant amount of evidence in addition to support for his analysis of the treating and non-treating medical opinions. (T. 955-63.) The ALJ was not required to accept every limitation in any of the opinions he was tasked with weighing. *Matta*, 508 F. App'x at 56; *Zongos v. Colvin*, 12-CV-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion, but not to another portion). Further, in weighing the opinions and indicating why they were afforded varying degrees of weight, the ALJ acknowledged the treating relationships or lack thereof between the medical professionals and Plaintiff, any inconsistencies between the opinions and the evidence of record, and any inconsistencies between the opinions and Plaintiff's documented complaints and reported activities. (T. 956-62.)

Second, Plaintiff's argument that the ALJ failed to specifically address the issues of work pace and/or attendance or explain why he did not find any limitations notwithstanding the medical opinions of record is incorrect. The ALJ's decision contains discussion of Plaintiff's alleged concentration and work pace limitations and the ALJ made an explicit finding that she has a moderate limitation in concentrating, persisting, or maintaining pace. (T. 953.) The ALJ afforded limited weight to the opinions from Dr. Nichols and Dr. Bouali indicating limitations in the ability to concentrate and sustain work pace because these opinions were not supported by documented complaints or clinical findings and were inconsistent with Plaintiff's activities. (T.

961.)  The ALJ also adequately discussed Plaintiff's mental RFC and addressed the various opinions and treatment records within his analysis.  (T. 960-62.)

Third, the Court does not find support for Plaintiff's arguments that the ALJ erred in relying on consultant Blackwell's opinion and improperly afforded significant weight to Dr. Chandresekhar's medical expert opinion.  Again, the ALJ's overall decision provides adequate explanation of his analysis regarding the opinion evidence.  Further, in assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  As explained by the ALJ, he afforded significant weight to Blackwell's opinion given Blackwell's specialty, programmatic knowledge, and review of Plaintiff's records up to that point, and the support found in the evidence of record; and the ALJ afforded significant weight to Dr. Chandrasekhar's opinion given his professional expertise, his review of almost the entire record, and the support found in the evidence of record. (T. 959-61, 1575.)

Fourth, the Court does not find persuasive support for Plaintiff's argument that the ALJ's analysis further misunderstands her fibromyalgia.  As this Court has previously noted, fibromyalgia is a unique disease and the Second Circuit has recognized it is a disabling

impairment for which there are no objective tests that can conclusively confirm it. *Fuller v. Comm'r of Soc. Sec.*, 14-CV-0472 (GTS/TWD), 2015 WL 5512383, at *7 (N.D.N.Y. Sept. 16, 2015); *Green-Younger v. Barnhart*, 335 F. 3d 99, 108 (2d Cir. 2003). The absence of swelling joints or other orthopedic and neurologic deficits "is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Green-Younger*, at 109 (citing *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996)).

In *Fuller*, this Court found it was error for the ALJ to rely on a lack of objective medical evidence alone when the claimant suffered from fibromyalgia and remanded for proper review of a treating physician's opinion in light of the claimant's fibromyalgia condition. 2015 WL 5512383, at *9-11. Here, however, it appears that, while the ALJ may have noted a lack of clinical and objective findings, he did not rely solely on this aspect of the record in finding Plaintiff was not disabled or in determining her RFC. Rather, he additionally pointed to a combination of a lack of evidence supporting Plaintiff's allegations of disabling symptoms as well as inconsistencies between the treating source opinions and Plaintiff's reported activities. (T. 954-63.)

Indeed, the ALJ noted Plaintiff's records documented some positive clinical findings including gait difficulties, positive tender points, and use of a cane or walker at various times, but these findings were not constant and, despite the findings, Plaintiff was repeatedly in no acute distress and was able to engage in a vast array of activities. (T. 955.) The Court now acknowledges that the symptoms of fibromyalgia can wax and wane. SSR 12-2p, 2012 WL 3104869, at *6. However, the Court's review of the record and the ALJ's analysis reveals adequate support for the ALJ's overall decision.

The ALJ also pointed to various instances throughout the record indicating Plaintiff's allegations regarding fibromyalgia were not fully supported. For example, Plaintiff's alleged onset date was initially November 20, 2009, and the ALJ noted various periods after that date in which Plaintiff was working: November 2009 through January 2010 caring for the elderly and cleaning, in 2013 and 2014 as a teacher's aide, in 2014 and 2015 as a self-employed home health aide, in March 2015 as a companion for the elderly working one twelve-hour night shift a week, and in November 2015 as a home health aide working six hours a day, three times a week. (T. 170-83, 188-95, 235, 443-76, 731-42, 751-61, 780-87, 955, 957-58, 977-1034, 1256-62, 1477.) The ALJ noted Plaintiff also reported taking care of a handicapped person in her home which included moving the person in August 2015. (T. 958, 1488.)

Additionally, the ALJ relied in part on Plaintiff's activities of daily living, noting she variously reported caring for her children and pets, performing personal care, preparing meals, driving, shopping, doing laundry and dishes, watching her children play sports, and doing household chores. (T. 196-213, 285-89, 769-79, 931-34, 955, 977-97, 1601.) The ALJ pointed to Dr. Nichols' May 2010 note indicating that, while Plaintiff appeared to have fibromyalgia, her disability seemed out of proportion to what he normally saw and there might be other pathologies present, or, more likely psychological factors that aggravated muscle pain and weakness. (T. 330, 956.) The ALJ also pointed to Dr. Nichols' January 2015 note that Plaintiff's complaints seemed out of proportion to her general appearance, but acknowledged sometimes physical findings could be minimal with quite disabling conditions. (T. 895, 957.) Moreover, the ALJ noted Plaintiff was documented as a very poor historian in March 2015. (T. 958.)

Additionally, there was no evidence Plaintiff returned to her rheumatologist Dr. Bouali after June 2011 and, after April 2013, did not return to her primary care provider until June 2014. (T. 957, 1670.) The ALJ pointed out Plaintiff declined referral to a neurologist, rheumatologist, and pain management specialist in November 2015 and acknowledged not taking her medication as directed. (T. 958, 1473, 1476.) That same month, an emergency room provider indicated drug-seeking behavior remained a possible cause for Plaintiff's symptoms as they were not observed when a physician was not present in the exam room, Plaintiff repeatedly asked for narcotic medications, the origin of her symptoms did not appear organic in nature, and she became increasingly aggressive and disruptive and was verbally abusive to the staff. (T. 958, 1446, 1522.) The ALJ further noted that, in June 2017, Alma Dzafic, M.D., observed Plaintiff was using all four extremities without any difficulty during the interview, but once the physical exam started and she was asked to follow commands for the neurological procedures, she stated she was unable to do so due to weakness. (T. 959, 1603, 1609.)

Finally, the ALJ relied on medical expert Dr. Chandrasekhar's October 2017 opinion, which noted Plaintiff's chronic pain complaints and demand for opioids including IV morphine, fluctuating weights without any explanation, anxiety and depression, inconsistencies between the complaints and findings, and opiate dependence suspected with psychiatric and opioid issues as the major problems. (T. 1658, 1660-62, 1664.) The ALJ afforded significant weight to this opinion, noting Dr. Chandrasekhar's professional expertise and review of almost the entire record along with the support found in the evidence of record. (T. 959.)

After properly reviewing the evidence before him, the ALJ ultimately concluded, in light of Plaintiff's work activities, vast array of activities of daily living, and negative clinical findings as well as his weighing of the opinion evidence, Plaintiff retained the RFC to perform a modified

range of light, simple work. (T. 954, 960, 962-63.) For the reasons stated above, the Court finds that the ALJ's RFC analysis and consideration of the opinion evidence and Plaintiff's fibromyalgia are supported by substantial evidence. Remand is therefore not required on these bases.

### B. Substantial Evidence Supports the ALJ's Step Five Determination

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Plaintiff argues the Step Five determination is not supported by substantial evidence because it is based on VE testimony in response to a hypothetical question which mirrored the inaccurate RFC. (Dkt. No. 16, at 27.) As indicated in Section III.A. of this Decision and Order, the Court finds that the ALJ's RFC determination is supported by substantial evidence, as is the ALJ's analysis of the opinion evidence and Plaintiff's fibromyalgia. Additionally, Plaintiff has not established further limitations than those included in the ALJ's RFC determination. The VE

testimony was based on a hypothetical question which accurately reflected the RFC and the ALJ properly relied on such testimony to find Plaintiff can perform other jobs existing in significant numbers in the national economy. (T. 963-64, 1024-32.) Therefore, the Court finds that the Step Five determination is likewise supported by substantial evidence.

**ACCORDINGLY**, it is

   **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **<u>DENIED</u>**; and it is further

   **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **<u>GRANTED</u>**; and it is further

   **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

   **ORDERED** that Plaintiff's Complaint is **<u>DISMISSED</u>**.

   Dated: June 6, 2019
   Syracuse, New York

   Thérèse Wiley Dancks
   United States Magistrate Judge